# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| NFOCUS CONSULTING INC., <br>                    PLAINTIFF, <br><br> v. <br><br> BENJY UHL; VALPAK DIRECT MARKETING SYSTEMS INC., <br>                    DEFENDANT. | Case No.   2:20-cv-05106-MHW-KAJ <br><br> Judge Michael H. Watson <br><br> Magistrate Judge Kimberly A. Jolson |

### DEFENDANT VALPAK DIRECT MARKETING SYSTEMS INC. AND PLAINTIFF FOCUS CONSULTING INC.'S JOINT MOTION TO SEAL

Defendant Valpak Direct Marketing System Inc. ("Valpak") and Plaintiff NFocus Consulting, Inc. ("NFocus") hereby jointly respectfully request that the Court seal certain of NFocus' Interrogatory Responses.[1]

The Court should grant this motion because it is narrowly tailored to only file under seal only portions of these documents necessary to protect confidential business information. *See Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016); *see also Total Quality Logistics, LLC v. Riffe*, No. 1:19-CV-23, 2020 WL 5849408, at *2 (S.D. Ohio Sept. 30, 2020)

---

[1] There were additional documents included in Valpak's initial motion to seal (Doc. 45) that are not included in this motion. The parties have been able to resolve any confidentiality issues with the remaining documents and they will be filed with the Court the same day that this motion is filed.

(granting motions to seal based on the documents containing confidential and proprietary business information).

The Court has the authority to allow the parties to seal these exhibits. Federal Rule of Civil Procedure 5.2(d) and (e) provide a court with the authority to allow court filings to be made under seal or redacted, for good cause. Yet, because "[t]he public has a strong interest in obtaining the information contained in the court record[,]" there is a " 'strong presumption in favor of openness' as to court records." *Shane Group, Inc.*, 825 F.3d at 305 (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179–80 (6th Cir. 1983)). The party seeking to seal documents bears the burden of overcoming the strong presumption. "Only the most compelling reasons can justify non-disclosure of judicial records." *Id*. (internal citation and quotation marks omitted). "[T]he greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Id*.  Here, these standards are met.

- **NFocus' Interrogatory Responses**

NFocus identified certain portions of its Interrogatory Responses as "Attorneys' Eyes Only" or "AEO" under the Protective Order (Doc. 32).  This designation was placed on the responses for two reasons.  First, NFocus designated the identity of its former clients in response to Interrogatory Nos. 1 and 2 as AEO because it did not want to disclose to Valpak a complete list of its former clients.

NFocus states that disclosing this information to Valpak, its purported competitor, will put NFocus at a competitive disadvantage in the marketplace. Ursula LaVeck Declaration ("LaVeck Decl.") ¶ 8. Indeed, NFocus contends that it maintains all of its customer information in secrecy, including requiring employees to sign a confidentiality agreement prohibiting the disclosure of NFocus' client list. LaVeck Decl. ¶ 6-7. While the Interrogatories asked NFocus to identify clients that had either terminated or significantly reduced the use of its services, NFocus contends that "[i]t is common for NFocus' customers to temporarily cease placing orders, but then to return and again begin placing orders with NFocus." LaVeck Decl. ¶ 5. Therefore, the identities of NFocus' customers in response to the Interrogatories may include ongoing customers and thus it is NFocus' position that this list is confidential business and customer information.

Second, NFocus designated the security features it placed on its data platforms, as described in response to Interrogatory Nos. 5 and 6, as AEO. NFocus has stated that this information was designated as AEO so that clients and malevolent third parties could not use the Interrogatory Responses to work around or undermine the security features, thereby potentially harming NFocus. LaVeck Decl. ¶ 11-12.

The Southern District of Ohio has repeatedly "recognized that protecting confidential information that would otherwise allow competitors an inside look at a

company's business strategies is a compelling reason to restrict public access to filings." *Total Quality Logistics, LLC*, No. 1:19-CV-23, 2020 WL 5849408, at *2 (citing *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, No. 1:11-CV-871, 2017 WL 4168290, at *2 (S.D. Ohio Sept. 20, 2017); *The Procter & Gamble Co. v. Ranir, LLC*, 2017 WL 3537195, at *3 (S.D. Ohio Aug. 17, 2017) (defining "Confidential Information" as, at a minimum, including "non-public information" that contains "confidential trade secret, technical, business, financial, or personal information")). Here, NFocus' Interrogatory Responses contain non-public, confidential business information that this Court has consistently held to be appropriate for filing under seal. "[T]he documents at issue contain confidential business information that, if disclosed on the public docket, would give a significant advantage to competitors of the parties in this action." *Total Quality Logistics, LLC*, No. 1:19-CV-23, 2020 WL 5849408, at *2. Such information includes customer names and contact information, which is the type of information this Court has held the public has little to no interest in. *Id*.

Further, it is NFocus' position that disclosure of the security measures NFocus has in place to protect its confidential information, which is described in detail in the Interrogatory Responses, may pose great risk to the maintenance of that security. It is NFocus' position that the details of its security measures implemented to protect its confidential information not of great interest to the

public, disclosure of such information may significantly harm NFocus' competitive advantage by exposing them to a potential breach of security. NFocus contends that having information related to NFocus' security procedures may allow competitors to more easily work around those protections thereby negating the purpose of having those measures in place.

The request here is narrowly tailored – only those portions of NFocus' Interrogatory Responses that disclose customer information or describe NFocus' security measures are sought to be filed under seal, information which is withheld from the public does no harm to the public interest. Indeed, all other information may be disclosed pursuant to the Sixth Circuit's presumption in favor of openness under *Shane Group, Inc*. Thus, only those requested portions of NFocus' Interrogatory Responses should be allowed to be filed under seal to protect such sensitive information.

Therefore, Valpak and NFocus respectfully and jointly request that this Court grant this Motion to Seal NFocus' Interrogatory Responses.

Dated:  December 3, 2020	Respectfully submitted,

By:/s/ Tamany Vinson Bentz
TAMANY J. VINSON BENTZ
MICHAEL BOARDMAN
DLA PIPER LLP (US)
2000 Avenue of the Stars,
Suite 400 North Tower
Los Angeles, California 90067
T: 310-595-3000

        F: 310-595-3300  
        E: tamany.bentz@us.dlapiper.com  
           michael.boardman@us.dlapiper.com  
        Attorneys for Defendants  
        Valpak Direct Marketing Systems Inc.

Dated: December 3, 2020        Respectfully submitted,

By: /s/ Christopher C. Wager  
    Christopher C. Wager (0084324)  
    Lisa A. Messner (0074034)  
    MacMurray & Shuster LLP  
    6525 West Campus Oval, Suite 210  
    New Albany, OH 43054  
    T: 614-939-9955  
    E: cwager@mslawgroup.com  
       lmessner@mslawgroup.com  
    Attorneys for Plaintiff  
    NFocus Consulting, Inc.

## Certificate of Service

I hereby certify that a copy of the foregoing was served upon the following counsel for NFOCUS by electronic means on December 3, 2020:

Christopher C. Wager
Lisa A. Messner
MacMurray & Shuster LLP
6525 West Campus Oval, Suite 210
New Albany, OH 43054
614-939-9955

Email:  cwager@mslawgroup.com
        lmessner@mslawgroup.com

Dated:  December 3, 2020      Respectfully Submitted,

By:   /s/ Tamany J. Vinson Bentz
    TAMANY J. VINSON BENTZ
    MICHAEL BOARDMAN
    DLA PIPER LLP (US)
    2000 Avenue of the Stars
    Suite 400 North Tower
    Los Angeles, California 90067
    T:  310-595-3000
    F:  310-595-3300
    E:  tamany.bentz@us.dlapiper.com
        michael.boardman@us.dlapiper.com

    Attorneys for Defendants
    Valpak Direct Marketing Systems Inc.

**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| NFOCUS CONSULTING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:20-cv-05106 |
| | ) | |
| v. | ) | Judge Michael H. Watson |
| | ) | |
| BENJY UHL, et al. | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF URSULA LAVECK

1. My name is Ursula LaVeck, I am over the age of 18 years old, and if called to personally testify could competently attest to the matters discussed below.

2. I am the Vice President of Finance and Strategy for NFocus Consulting, Inc. ("NFocus").

3. I am knowledgeable regarding NFocus' responses to Interrogatories Nos. 1, 2, 5, and 6 served by Valpak in this matter.

4. In response to Interrogatory Nos. 1 and 2, which requested that NFocus "Identify each and every company that has terminated or significantly reduced its use of NFocus' services since September 2017" and to provide the reason why those customers left NFocus, NFocus produced a list of its clients that cease placing orders within the last three years (the "List").

5. It is common for NFocus' customers to temporarily cease placing orders, but then to return and again begin placing orders with NFocus. As such, NFocus values its lists of recent customers (regardless of whether they have placed in order in the past few years) equally as its list of current customers.

6. NFocus maintains its client list in secrecy, including requiring its employees to sign a confidentiality agreement which, among other things, prohibits the employees for disclosing its client list outside of NFocus.

7. NFocus' client lists, including the List, retains its value from the fact that they are kept in confidence.

8. A competitor such as Valpak, a defendant in this litigation, obtaining such a customer list would be granted an extraordinary competitive advantage. This is especially true with the List because it identifies companies that have historically purchased mailing lists, and also identifies companies that have greater likelihood of needing a mailing list provider given their failure to order lists from NFocus in the past few years.

9. Providing the List to Valpak or otherwise making it publicly available would particularly harm NFocus, as customers that have not recently placed orders routinely reengage as NFocus clients.

10. In response to Interrogatory No. 5 and 6, which requested that NFocus describe each and every "security measure" and "proper safeguard" implemented by NFocus on its client facing platforms, NFocus produced a list of security measures installed on its platforms (the "Security Measures").

11. The Security Measures outline confidential systems and practices that NFocus has implemented to prevent both its clients and malevolent third-party users from unauthorized access to its online platforms, or from otherwise harming NFocus.

12. If the Security Measures were disclosed publicly, or even only to NFocus' clients, it would undermine the protective steps put in place, as those with knowledge may be able to develop workarounds that would frustrate or undermine the Security Measures.

2

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 3, 2020.

_____
Ursula LaVeck